IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ROSE LINDA AVILES

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,

    Defendant.

No. 10-2242 EDL

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING CASE; DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Plaintiff Rosa Aviles ("Plaintiff") filed suit pursuant to 42 U.S.C. § 405(g) seeking judicial review of a partially favorable final decision denying in part her claim for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 400 et seq. The decision found Plaintiff totally disabled for a closed period from December 19, 2005 through July 14, 2008, but found medical improvement that ended her disability on July 14, 2008. Plaintiff filed this motion for summary judgment pursuant to Local Rule 16-5, requesting, in the alternative: (1) summary judgment in favor of Plaintiff without remand, and holding Plaintiff "disabled" for the period from July 2008 to March 2009; or (2) remand with directions to Defendant Social Security Administration ("SSA") on the adjudication of additional proceedings. Defendant timely filed an opposition and cross-motion for summary judgment. Plaintiff did not file a reply. For the following reasons, the Court GRANTS Plaintiff's motion and remands the case to the ALJ for further findings regarding the credibility of Plaintiff's excess pain testimony which may impact the medical improvement determination.

## II. PROCEDURAL HISTORY

On June 14, 2007, Plaintiff submitted a Disability Determination and Transmittal.

1  Administrative Record ("AR") 53.  On July 11, 2007, Plaintiff filed an application for Title II
2  Disability Insurance Benefits.  AR 109.   The SSA denied her claim initially and on reconsideration.
3  AR 55, 62.  On December 7, 2007 Plaintiff requested a hearing.  AR 69.  Her request was granted
4  and a hearing was held before Administrative Law Judge ("ALJ"), Randolph E. Schum on April 16,
5  2009.  AR 24.  On August 24, 2009, the ALJ issued a decision which was partially favorable to
6  Plaintiff.  AR 11-21.  The ALJ found Plaintiff totally disabled from December 19, 2005 through July
7  14, 2008.  AR 16.  The ALJ found medical improvement occurred on July 14, 2008 which ended
8  Plaintiff's disability pursuant to 20 C.F.R. § 404.1567(b).  AR 16.  The ALJ found that since July 14,
9  2008, Plaintiff could not continue in her previous profession but had the residual functional capacity
10  to perform a number of other jobs in the national economy.  AR 20.
11       On March 22, 2010, the SSA denied Plaintiff's request for review of the Administrative Law
12  Judge's decision.  AR 1.  Plaintiff filed this suit for judicial review on May 24, 2010.  Dkt. #1.  On
13  October 18, 2010, Plaintiff filed this motion for summary judgment and thereafter, Defendant filed a
14  cross-motion for summary judgment in opposition to Plaintiff's motion.  Dkt. #12-13.

15  **III.  FACTUAL BACKGROUND**

16       Plaintiff was born in 1966, in El Salvador where she completed three years of college without
17  obtaining a degree.  AR 25, 31, 53.  Plaintiff became a U.S. citizen in 2005.  AR 32.  Prior to her
18  injury, Plaintiff was employed in data entry as a Senior Clerk for Contra Costa County.  AR 26.  Her
19  duties included typing, writing, filing, making copies, preparing mail, lifting no more than 10
20  pounds and occasionally driving.  See generally AR 26-27, 36 -37, 221-22, 236, 276-77.  Plaintiff
21  was injured on April 12, 2004.  AR 52.  Her injury was a repetitive-use type of injury and was work-
22  related with pain in her neck, and left and right upper extremities .  AR 383, 493-96, 512, 519, 617.
23  Plaintiff was first treated by her primary care physician around April 14, 2004, and underwent trials
24  of physical therapy, acupuncture and injections of the left shoulder.  AR 518.  On May 12, 2005,
25  Plaintiff first reported this injury to her employer.  AR 518.  She complained of pain and numbness
26  in her right elbow, shoulder and neck and was treated by Muir/Diablo Occupational Medicine.  AR
27  517-19, 514, 512; see also AR 220.  Dr. Robinette, her treating physician at Diablo, recommended
28  an ergonomic evaluation, prescribed soma for spasm and sleep aid, an ice/heat pack every two hours

2

and a topical Banalg cream, but stated that she could continue working. AR 518-19. At her second follow-up, Dr. Robinette recommended a forearm brace, a prednisone trial and physical therapy three times a week for two weeks. AR 513.

On June 6, 2005, Dr. Kenneth Zylker, Plaintiff's chiropractor, reported that Plaintiff was unable to work from June 6, 2005 through August 15, 2005. AR 520. Dr. Zylker recommended treatment including chiropractic adjustments, inter-segmental traction, micro-current, work conditioning, infra-red therapy. Id. He also recommended accommodated work conditioning, work assessment and functional capacity evaluations. Id. A job site analysis was performed on June 27, 2005 and work practice and work space modifications were recommended. AR 504-06. On July 22, 2005, a qualified medical evaluation ("QME") was performed by Rosa Ramirez. AR 492. On August 12, 2005, Dr. Zylker cleared Plaintiff to return to work for four hours per day. AR 502. She had a flare up on August 22, 2005 and visited Dr. Zylker who again limited her to working only four hours per day. AR 490- 91. Plaintiff continued working but had occasional flare ups in her symptoms. AR 491, 489, 485. On November 15, 2005, Plaintiff was cleared to do six hours of work per day, but could only do one hour of typing. AR 484. Plaintiff continued to work on and off until December 8, 2005, when she experienced a serious flare up in her symptoms. AR 482. She was continually excused from work for two week periods until January 18, 2006 when Dr. Zykler determined Plaintiff had to take time off from her job until April 16, 2006. AR 479-80.

On March 15, 2006, Plaintiff first visited Dr. Vatche Cabayan, an orthopaedic surgeon. AR 471-76. Plaintiff had an MRI on March 31, 2006 and on April 24, 2006, after reviewing the MRI, Dr. Cabayan diagnosed Plaintiff with multilevel degenerative disc disease in her neck. AR 615; see also AR 383. Dr. Pinckney, a member of Dr. Cabayan's practice group, "Risk Management Associates," recommended facet injections and nerve conduction studies and Dr. Cabayan suggested more physical therapy. AR 456, 454, 451, 445. Plaintiff was cleared to return to work on May 15, 2006 for four hours per day with the condition that her keyboard use be minimized, she perform no filing above shoulder level and no lifting of more than two to three pounds. AR 442. Plaintiff continued to work for four hours per day despite increasing pain and stiffness. See AR 408, 395-6. On October 6, 2006, Dr. Cabayan submitted a surgery authorization request. AR 394, see also AR

3

390. Plaintiff was relieved from work on November 15, 2006 and remained off of work through June 4, 2007. AR 373, 365, 355, 345, 341, 338. On June 4, 2007, Plaintiff had surgery on her right elbow to relieve her chronic epicondylitis. AR 312-13. She had multiple follow-up appointments and injections in her course of treatment for pain management. See AR 314-15, 320-21, 346-49. Plaintiff had more physical therapy after the surgery. AR 322, 325-26, 329, 628-34. On July 23, 2007 Plaintiff reported consistent migraine headaches, a 50 percent decrease in pain in her left shoulder and increased pain and stiffness in her right shoulder. AR 320-21. On August 8, 2007, Plaintiff was given an at-home physical therapy program to deal with her right shoulder pain and stiffness. AR 560.

On September 17, 2007, Dr. Rosenberg, also a member of Risk Management Associates, described Plaintiff's condition as having "four distinct problems." AR 580. Plaintiff had persistent headaches and occasional migraines, neck pain, right shoulder pain and numbness and tingling in her right arm and hand, and left shoulder pain. AR 580-81. Dr. Rosenberg believed Plaintiff might have developed carpel tunnel syndrom and requested nerve conduction studies to verify this diagnosis. AR 582; see also AR 576-77. Plaintiff received the nerve conduction test on December 4, 2008 and the studies were normal. AR 672, see, 673-75. On October 26, 2007, Plaintiff received cervical medical branch block injections and had some decrease in pain on her left side as a result. AR 566-67, 564. On December 10, 2007, Dr. Cabayan and Dr. Rosenberg recommended medial branch rhizotomies on the left side because they believed it would relieve her left sided neck and shoulder pain. AR 563. On February 27, 2008, Dr. Cabayan ordered medial branch rhizotomies on the right side because the procedure had successfully relieved some of Plaintiff's left side pain. AR 556. Dr. Cabayan believed that this procedure would enable Plaintiff to return to work. AR 557. On March 17, 2008, Plaintiff reported complete relief from neck pain and minimal pain in shoulder blade area and trapezius muscle, and was released to return to modified duty with work restrictions. AR 555.

However, in his report dated March 19, 2008, Dr. Cabayan stated that Plaintiff had not returned to work because modified duties were not being provided by her employer and she was having transportation issues. AR 552. On May 21, 2008, Plaintiff was again cleared to return to

4

1  work with restrictions. AR 671. She was to begin June 2, 2008, but as of June 11, 2008 a position
2  with modified duties had not become available. AR 669, 666. On July 2, 2008 Dr. Cabayan
3  reported that Plaintiff's grip strength had improved, but she was still having pain and stiffness in her
4  neck, and pain and grip loss of the right hand. AR 660. Dr. Cabayan approved Plaintiff to return to
5  work on July 7, 2008 to perform clerical duties five to eight hours per day, five days per week. AR
6  660-61; see also 662. Dr. Cabayan stated that Plaintiff was permanent and stationary, could only use
7  the keyboard for fifteen minute periods for no more than four hours per day, and should avoid
8  gripping lifting or grasping anything over five pounds. AR 661.

9       Plaintiff had a follow-up appointment on August 6, 2008. Her grip strength had improved by
10  five pounds in each hand but all other symptoms and work restrictions remained the same. AR 656-
11  57. At her August 18, 2008 follow-up appointment, Plaintiff indicated that the radiofrequency
12  treatment had completely resolved her left side pain but her right side pain was returning. AR 654.
13  Dr. Cabayan requested radiofrequency for Plaintiff's right side on October 15, 2008, prescribed an
14  elbow sleeve with strap, and kept her work restrictions the same. AR 652. On November 19, 2008
15  Plaintiff complained of neck pain and Dr. Cabayan requested a nerve conduction study and
16  prescribed pain killers, but did not change her work restrictions. AR 650. On December 17, 2008,
17  Plaintiff returned to Dr. Cabayan complaining of ongoing pain with motion loss in her neck as well
18  as pain along the elbows with grip loss and pinching limitations. AR 647. Dr. Cabayan noted that
19  Plaintiff was only working four hours per day and that her nerve conduction studies were normal.
20  AR 648. He recommended facet injections and radiofrequency on the right side. AR 647-48. The
21  final information in the record is a report from Dr. Cabayan dated April 1, 2009 indicating Plaintiff
22  was still having pain in her neck shoulder and elbow, was using pain medication, and that Plaintiff
23  was permanent and stationary but continued working.

### IV. Final ALJ Decision

In his decision dated August 24, 2009, the ALJ held as follows: (1) Plaintiff has not engaged in substantial gainful activity since November 15, 2006; (2) Plaintiff's "severe" impairments are residuals of right elbow surgery, degenerative disc disease of the cervical spine and mild degenerative changes of the right shoulder; (3) Plaintiff's impairments did not meet or medically

5

equal an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) from December 19, 2005 to July 13, 2008, Plaintiff's statements regarding her symptoms were credible; (5) from December 19, 2005 to July 13, 2008, Plaintiff was disabled; (6) medical improvement occurred as of July 14, 2008 and Plaintiff's disability ended; (7) as of July 14, 2008, Plaintiff had the RFC to perform light work as defined by 20 C.F.R. § 404.1567(b), limited to lifting/carrying 10 pounds frequently and 20 pounds occasionally, standing/walking, and sitting for six hours each in an eight hour day, occasionally climbing ropes/ladders/scaffolding, and occasionally fingering, reaching overhead, and feeling with right upper extremity; (8) the medical improvement is related to Plaintiff's ability to work; (9) since July 14, 2008, Plaintiff has been unable to perform past relevant work; (10) beginning July 14, 2008, Plaintiff was able to perform a significant number of jobs in the national economy; and (11) Plaintiff's disability ended July 14, 2008. AR 14, 15, 16, 19, 20, 21.

In determining Plaintiff's period of disability, the ALJ outlined the objective medical evidence supporting Plaintiff's complaints of debilitating pain from May 2005 through July 2008. Beginning in May of 2005, Dr. Robinette reported that Plaintiff should be taken off computer work due to right upper extremity injury. AR 17. This diagnosis was confirmed by Dr. Cabayan, an orthopaedic surgeon who reported a cervical sprain and right epicondylitis. AR 17. However, an MRI taken in April 2006 did not reveal the cause of Plaintiff's pain. AR 17. In June 2007, Plaintiff had a right epicondylectomy which resolved much of her right side pain, though Plaintiff still had some left side impingement and reduced range of motion. AR 17. In September 2007, Dr. Pong reported improvement in Plaintiff's work functions, such as lifting, fingering, ability to climb, but Dr. Cabayan was still concerned that Plaintiff had progressive disc disease and ordered repeat nerve studies. AR 17. In October 2007, Dr. Rosenberg reported that Plaintiff had increased migraine and tension headaches, but her December 2007 nerve conduction studies were again negative. AR 17. In January 2008, Plaintiff was diagnosed with multi-level degenerative disc disease and underwent 4- level rhizotomies in January and August 2008 and a 3-level rhizotomy in February 2008, which resulted in "very significant" relief of pain. AR 18. In June 2007, Dr. Cabayan limited Plaintiff to two to three hours per day of work with keyboarding for only 15 minutes at a time. AR 18. In April 2008, Dr. Cabayan increased Plaintiff's keyboard time to up to 50 minutes and noted that while she

6

still had neck pain, her nerve conduction studies and MRI were unremarkable. AR 18. In May 2008, Dr. Cabayan diagnosed Plaintiff with left shoulder radiculitis. AR 18.

In July 2008, Dr. Cabayan released Plaintiff to work up to eight hours per day, five days per week. AR 18. The ALJ placed a great deal of weight on two documents in the record which stated that Plaintiff could to work eight hours per day, five days per week. AR 18.[1] The first is a standard doctor's note signed by Dr. Cabayan on July 2, 2008 releasing Plaintiff to work full time in clerical registration work beginning July 7, 2008. AR 662. The second is the corresponding Qualified Medical Examiner report indicating that Plaintiff "will return to work July 7, 2008," eight hours per day, five days per week with certain limitations. AR 668-69. The ALJ also notes that in April, 2009, Plaintiff was assessed by Dr. Cabayan and considered able to continue working. AR 18; see also AR 679.

The ALJ found Plaintiff's pain testimony to be credible and the primary basis for her disability to be disabling pain. However, the ALJ stated that pain cannot have a significant effect on a disability determination unless "medical signs or laboratory findings" indicate a medically determinable cause of Plaintiff's alleged pain. AR 19. Therefore, the ALJ looked to other evidence indicating Plaintiff's alleged pain. AR 19. The ALJ did not find other evidence supporting Plaintiff's claims of debilitating pain past July 13, 2008. Id. The ALJ did not hear testimony from Plaintiff's sister that Plaintiff proffered to show her difficulty functioning and her need to lay down. AR 43-44. The ALJ stated that the sister's testimony was not relevant because "it's not an issue of credibility as far as [Plaintiff's] symptoms are concerned." AR 44. The ALJ found that Plaintiff's "sustained treatment throughout the period July 1, 2006 through July 13, 2008" achieved medical improvement. AR 19. Further, the ALJ found that Dr. Cabayan's scheduled follow-up appointments at six week intervals did not indicate a severe disease process. AR 19.

The ALJ concluded that Plaintiff was disabled for a closed period from November 15, 2006 to July 13, 2008. AR 16. He found that on July 14, 2008, medical improvement occurred. AR 16. The ALJ stated that he based this determination on all symptoms that could be reasonably accepted

---

[1] The ALJ referred to Exhibit 18F, but because this exhibit does not contain documents referring to this time period, the Court assumes that he intended to refer to Exhibit 16F (AR 662, 668-69).

7

as consistent with objective medical and other evidence, as well as medical opinion evidence from Dr. Robinette, Dr. Cabayan, Dr. Pong and Dr. Rosenberg. AR 16; see also AR 17-19. The ALJ also found that from July 14, 2008 on, Plaintiff had the RFC to perform a significant number of jobs in the national economy. AR 20. The analysis in steps one through four were the same for the period from November 15, 2006 to July 13, 2008 and from July 14, 2008 to March 9, 2009, but the analysis diverged at step five.

For the second time period, the ALJ found that Plaintiff was unable to perform past relevant work but that Plaintiff had the residual functional capacity to perform less than the full range of light work. AR 20. The ALJ found that, as of July 14, 2008, considering Plaintiff's age, education, work experience and improved RFC, Plaintiff was able to perform a significant number of jobs in the national economy. AR 20. The ALJ made this determination based on his finding of medical improvement and the testimony of a Vocational Expert ("VE"). The vocational expert was asked a hypothetical question regarding the occupations a person in the same situation and with the same limitations as the Plaintiff would be able to perform and he listed two possible occupations: an information clerk and an unarmed security guard. AR 20. The VE testified that there were many such jobs available nationally as well as locally. AR 20. Finally, the ALJ refused to grant Plaintiff a trial work period from July 14, 2008 to March 2009 because he did not believe he had the authority to do so, and "such a determination would be better left to another component of the agency for resolution." AR 19.

## V.  STANDARD OF REVIEW

This Court's jurisdiction is limited to determining whether the findings of fact in the decision below are supported by substantial evidence or whether they were based on legal error. 42 U.S.C. § 405(g); see Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). Substantial evidence is relevant evidence, not necessarily admissible, which a reasonable person might accept as adequate to support a conclusion; it is "more than a mere scintilla but less than a preponderance." Id.; see also Richardson v. Perales, 402 U.S. 389, 400-01 (1971).

To determine whether substantial evidence supports the ALJ's decision, courts review the Administrative Record as a whole, and must weigh both evidence that supports and that which

8

detracts from the ALJ's decision. Sandgathe v. Charter, 108 F.3d 978, 980 (9th Cir. 1997) (quoting Andrews v. Shalala, 64 F.3d 1035, 1039 (9th Cir.1995)). The trier of fact, not the reviewing Court, must resolve conflicts in the evidence, and if the evidence is susceptible to more than one interpretation, the court must uphold the conclusion of the ALJ. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005); see also Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992). The ALJ's decision may not be reversed for harmless errors. Id.; see also Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1991).

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step process. Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007). First, the ALJ must decide whether the claimant has presented objective medical evidence of an underlying determinable physical or mental impairment which could reasonably produce the pain or other symptoms alleged. Id. (citing Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991)). Next, if the claimant has met the first prong, and there is no evidence of malingering, the ALJ can reject claimant's testimony "only by offering specific, clear and convincing reasons for doing so." Id. (citing Somlen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)). If the ALJ's credibility finding is supported by substantial evidence, it should not be second guessed. Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

### A. Definition and Determination of Disability

To qualify for disability insurance benefits, Plaintiff must demonstrate that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which can be expected to result in death or last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The SSA determines disability using a five-step sequential evaluation process. 20 C.F.R. § 404.1520; see Reddick, 157 F.3d at 721. If the SSA finds that the claimant either is or is not disabled at a step, then the SSA does not go onto the next step; if the determination cannot be made, then the SSA moves onto the next step. 20 C.F.R. § 404.1520. At step one, the SSA must determine whether the claimant is engaged in substantial gainful activity; if the claimant is engaged in substantial gainful activity, then she is not disabled. 20 C.F.R. § 404.1520 (a)(4)(I). At step two, the SSA must determine whether the claimant has a "severe" impairment or

1  combination of impairments. 20 C.F.R. § 404.1520 (a)(4)(ii). At step three, the SSA determines
2  whether the impairment or impairments meets the criteria of 20 C.F.R., part. 404, subpart P,
3  appendix 1and is expected to result in death or last for a continuous period at least 12 months. 20
4  C.F.R. § 404.1520 (a)(4)(iii); 20 C.F.R. § 404.1509. If the claimant's impairment or combination of
5  impairments is listed or equivalent in severity to those listed in 20 C.F.R., part. 404, subpart P,
6  appendix 1and meets the duration requirement, the claimant is disabled; if not, the analysis proceeds
7  to the next step. At step four, the SSA must determine the claimant's residual functional capacity
8  ("RFC") and past relevant work. If a claimant is able to perform past relevant work, she is not
9  disabled. 20 C.F.R. § 404.1520 (a)(4)(iv). At the fifth step, the SSA must determine whether the
10 claimant is able to perform any other work in the national economy considering RFC, age, education
11 and work experience. 20 C.F.R. § 404.1520 (a)(4)(v); 20 C.F.R. § 404.1560(c). The claimant has
12 the burden of showing that her impairment prevented her from performing her previous occupation.
13 Cotton v. Bowen, 799 F.2d 1403, 1405 (9th Cir. 1986). Once she has shown this, however, the
14 burden shifts to the SSA to show that she can perform other work under step five of the analysis.
15 Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

### B.      Duration of Disability

17 If the claimant is found disabled at any step in the analysis under 20 C.F.R. § 404.1520(a)(4),
18 the SSA must then determine the duration of the claimant's disability. 20 C.F.R. § 404.1594. To
19 determine when the disability period ends, the SSA uses an eight-step evaluation process. 20 C.F.R.
20 § 404.1594(f). Section 404.1594(f) provides evaluation steps which are specific steps that must be
21 followed when the SSA is determining whether to cease benefits to a particular claimant. Id. First,
22 the SSA must determine whether the claimant is engaged in substantial gainful activity. If the
23 claimant is engaged in substantial gainful activity and any applicable trial work period has ended,
24 the claimant is no longer disabled. 20 C.F.R. § 404.1594(f)(1). Second, the SSA must determine
25 whether the claimant has an impairment or combination of impairments which meets or medically
26 equals those listed in 20 C.F.R., part. 404, subpart P, appendix 1, the claimant remains disabled; if
27 not, the SSA continues to the next step. 20 C.F.R. § 404.1594(f)(2). Third, the SSA must determine
28 whether medical improvement has occurred according to 20 C.F.R. § 404.1594(b)(1). 20 C.F.R. §

404.1594(f)(3). If medical improvement has occurred, the analysis proceeds to the fourth step; if not, the analysis proceeds to the fifth step. At step four, the SSA must determine whether the medical improvement is related to the ability to work. If the medical improvement relates to the ability to work and if it results in an increase in claimant's capacity to perform work activities, the analysis proceeds to the sixth step. 20 C.F.R. § 404.1594(f)(4).

At step five, the SSA must determine if an exception to medical improvement applies. 20 C.F.R. § 404.1594(f)(5). There are two categories of exceptions: 20 C.F.R. § 404.1594(d) and 20 C.F.R. § 404.1594(e). The first group of exceptions apply when a claimant has not experienced medical improvement but for some other reason is now capable of engaging in substantial gainful activity. 20 C.F.R. § 404.1594(d). The second group of exceptions apply when claimant has been dishonest, uncooperative or failed to follow a prescribed course of treatment. 20 C.F.R. § 404.1594(e). If the exception is in § 404.1594(d), the analysis proceeds to step six; if it is in § 404.1594(e), claimant is no longer disabled. 20 C.F.R. § 404.1594(f)(5). At step six, the SSA must determine whether the claimant's current impairments are "severe." If the impairments do not significantly limit claimants ability to do basic work activities, the claimant is no longer disabled, if they do, the analysis proceeds to the next step. 20 C.F.R. § 404.1594(f)(6). At step seven, the ALJ must assess the claimant's RFC based on the current impairments and determine if claimant can perform past relevant work. If the claimant can perform past relevant work, she is not disabled, but if she cannot, the analysis proceeds to the next step. 20 C.F.R. § 404.1594(f)(7). Finally, the SSA must determine whether other work exists that the claimant can perform considering claimant's RFC, age, education, and past work experience. If claimant can perform other work, the claimant is no longer disabled. 20 C.F.R. § 404.1594(f)(8). If claimant cannot, claimant remains disabled. Id.

**VI. DISCUSSION**

In her Motion for Summary Judgment, Plaintiff argues that the ALJ's determination that, as of July 14, 2008, she was no longer entitled to disability benefits should be reversed because the ALJ improperly rejected Plaintiff's testimony regarding her symptoms after finding her to be credible, and his determination of medical improvement was not supported by substantial evidence. Plaintiff also argues that she was entitled to a trial work period from July 14, 2008 to March 9, 2009.

Defendant counters that the ALJ's decision should be upheld because the ALJ made specific findings related to Plaintiff's subjective symptoms and properly rejected her excess pain testimony, and substantial evidence supports the ALJ's finding of medical improvement. Defendant further contends that Plaintiff is not entitled to a trial work period after the ALJ determined she was no longer disabled. While a close question given that the ALJ did give some reasons for his denial, the Court concludes that the ALJ rejected Plaintiff's excess pain testimony for the second time period without giving sufficiently specific, clear and convincing reasons for doing so. Remand is appropriate for the ALJ's further consideration of this issue. Because the ALJ improperly rejected Plaintiff's testimony regarding her pain, the ALJ's finding of medical improvement must also be reconsidered on remand. The Court need not and does not reach the "trial work period" issue.

**A.    Excess Pain Testimony**

In 1984, Congress amended 42 U.S.C. § 423, the statute governing disability benefit payments, specifically to address pain. 42 U.S.C. § 423(d)(5)(A), see also Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991). Since then, the assessment of subjective pain testimony has become an integral part of the SSA's disability claim evaluation process. "Despite our inability to measure and describe it, pain can have real and severe debilitating effects; it is, without a doubt, capable of entirely precluding a claimant from working." Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989). Improper assessment of testimony about pain is reversible legal error. See Owens v. Heckler, 770 F.2d 1276, 1280 (9th Cir. 1989) ("failure to consider subjective evidence of pain is reversible error"). "Excess pain" is pain that is greater than that normally associated with an underlying medical impairment, or pain that is unsupported by objective medical findings. Varney v. Sec'y of Health & Human Services, 846 F.2d 581, 584 on reh'g, 859 F.2d 1396 (9th Cir. 1988).

Excess pain testimony should be considered in a disability determination as long as the pain is associated with a clinically demonstrated impairment. Id. Social Security Ruling ("SSR") SSR 88-13 requires the RFC assessment to "describe the relationship between medically determinable impairment and the conclusions of RFC which have been derived from the evidence, and must include a discussion of why reported daily activity restrictions are or are not reasonably consistent with the medical evidence." SSR 88-13 (1988). 20 C.F.R. § 404.1529 similarly states, "we consider

12

all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with objective medical and other evidence . . . statements about your pain or other symptoms will not alone establish that you are disabled," and "your symptoms, such as pain . . . will not be found to affect your ability to do basic work activities unless medical signs and laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. § 404.1529(a)-(b).

The Ninth Circuit has rejected SSA decisions discounting excess pain testimony based solely on a lack of objective medical evidence supporting the amount of pain alleged. Bunnell v. Sullivan, 947 F.2d 341, 346-47 ("the adjudicator may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence"); see also Fair v. Bowen, 885 F.2d 597, 601 ("our cases have established a clear rule regarding its assessment: Once a claimant submits objective medical evidence establishing an impairment that could reasonably be expected to cause *some* pain, 'it is improper as a matter of law for an ALJ to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings"). The Court in Fair explained:

> Because pain is a subjective phenomenon, moreover, it is possible to suffer disabling pain even where the *degree* of pain, as opposed to the mere *existence* of pain, is unsupported by objective medical findings. Referring to such pain as "excess pain," our cases have established a clear rule regarding its assessment: Once a claimant submits objective medical evidence establishing an impairment that could reasonably be expected to cause *some* pain, "it is improper as a matter of law for an ALJ to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings." Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir.1986) (per curiam). The rationale behind the rule is obvious: Excess pain is by definition pain at a level above that supported by medical findings.

Fair v. Bowen, 885 F.2d 597, 601-02 (emphasis in original).

In order to reject excess pain testimony after finding an underlying impairment that could be expected to cause some pain, an ALJ must make specific findings explaining why the claimant's testimony is not credible. Fair, 885 F.2d 597, 602; see also Hammock v. Bowen, 879 F.2d 498, 502 (9th Cir. 1989) ("the secretary is free to disbelieve a claimant's pain testimony, but he must make specific finding justifying that decision"). For example, evidence such as a claimant's ability to do housework, moderate exercise or care for children may demonstrate a lack of credibility. Fair, 885

13

F.2d at 603; see also Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) ("The ALJ may consider at least the following factors when weighing the claimant's credibility: '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimaint's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.").

Here, the ALJ expressly found Plaintiff credible, stating "claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms and the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are credible." AR 18; see also AR 15. However, the ALJ also stated that Plaintiff's claimed basis for her disability, disabling pain, could not have a significant effect on a disability decision unless "medical signs or laboratory findings show a medically determinable physical or mental impairment is present which can reasonably be expected to produce the pain alleged." AR 18-19. The ALJ based this statement on 20 C.F.R. § 404.1529 and SSR 88-13. Id. The ALJ found that Plaintiff experienced disabling physical pain from December 19, 2005 through July 13, 2008 which precluded her from performing substantial gainful activity. AR 19. However, the ALJ found that during the period from July 14, 2008 through March, 2009, at some unspecified point prior to December 19, 2009, Plaintiff was "successfully treated for pain." AR 19. He stated further that her MRI did not show a basis for her symptoms and her treating physician reported an excellent cervical range of motion. AR 19. Based on a lack of objective evidence, the ALJ rejected Plaintiff's testimony regarding "disabling pain" during the period from July 14, 2008 through March, 2009 even though he expressly found her to be credible. See AR 19-20.

In Green v. Heckler, 803 F.2d 528, 531-32 (9th Cir. 1986), the Ninth Circuit held that the ALJ's thorough discussion of medical evidence and physician's reports which did not support a connection between plaintiff's ailments and complaints of pain supported a finding that he was "not credible." Here, however, the ALJ did not find Plaintiff "not credible," but instead expressly found her pain testimony to be credible and that the underlying impairments could reasonably cause her pain, but only for the first period. AR 15, 19. While the ALJ did rely on reports of Plaintiff's

14

treating physician and cited her range of motion to support his conclusion, these reasons by themselves are not sufficiently specific to reject Plaintiff's pain testimony for the second period after finding her to be credible. The ALJ acknowledged that he must rely on "other evidence" to determine the limiting effects of Plaintiff's alleged pain, but then cited no such evidence in his decision and declined to hear testimony from Plaintiff's sister, stating that credibility was not at issue. AR 43-44. The only reason he gave for discounting Plaintiff's testimony regarding her pain for the second period was that the objective medical evidence did not support her claims. Though a close question, it was error for the ALJ to reject Plaintiff's excess pain testimony for the second time period without finding Plaintiff "not credible" and without giving additional specific, concrete reasons for doing so.[2]

### B. Medical Improvement

Plaintiff also argues that the ALJ erred in finding that she achieved medical improvement on July 14, 2008. Medical improvement is defined as any decrease in the severity of claimant's impairment(s). 20 C.F.R. § 404.1594(b)(1). If the medical improvement is related to a claimant's ability to work, and none of the exceptions apply, the claimant may no longer be disabled. 20 C.F.R. § 404.1594(b)(4)(i). When substantial evidence demonstrates that a claimant's medical improvement enables claimant to perform substantial gainful activity, the claimant's disability benefits will be terminated. 42 U.S.C. § 423(f); see also 20 C.F.R. § 416.994(b)(5)(vi). Once a claimant has been found to be disabled, "he or she is entitled to the presumption that disability still exists." Murray v. Heckler, 722 F.2d 499, 500 (9th Cir. 1993). The Commissioner bears the burden of showing that medical improvement has occurred that would enable the claimant to perform substantial gainful activity. Id.

The ALJ cites five reasons for finding that medical improvement occurred on July 14, 2008: (1) on an unspecified date prior to December 19, 2009, Plaintiff was successfully treated for pain

---

[2] Even if the ALJ had found Plaintiff not credible, the ALJ's findings needed to be sufficiently specific to allow a reviewing court to determine that the decision to reject the testimony was not arbitrary. Bunnell, 947 F.2d at 345; see also Reddick,157 F.3d 715, 722 (citing Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995) (ALJ's reasons for rejecting a claimant's testimony must be clear and convincing; "general findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints"). The ALJ's findings are not sufficiently specific for a court to determine that the finding was not made arbitrarily.

15

according to her physician; (2) an MRI failed to reveal a basis for claimant's symptoms; (3) an "excellent" cervical range of motion was noted by her treating physician; (4) Plaintiff's treating physician reported that she could return to work as of July 2008; and (5) as a result of sustained treatment from June 1, 2006 through July 13, 2008, medical improvement was achieved. AR 19.

Plaintiff disputes the ALJ's finding that medical improvement occurred on July 14, 2008. She argues that the ALJ ignored medical evidence supporting her contention that she was disabled through March 2009. In deciding to end Plaintiff's disability on July 14, 2008, the ALJ relied primarily on Dr. Cabayan's note, dated July 7, 2008, that released Plaintiff to work eight hours per day, five days per week. AR 662. There are two other references by Dr. Cabayan to Plaintiff's ability to work full time in the record. See AR 660, 668-69. Dr. Cabayan was Plaintiff's treating physician at the time, so his opinion was correctly given significant weight. See Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987) (opinions of treating physicians are given greater weight because they are "employed to cure" and have a greater opportunity to observe the claimant). The ALJ also referenced a nerve conduction study from December, 2009 in which Plaintiff's results were normal. AR 18; see also AR 672-75. Additionally, the ALJ relied on a note dated April 1, 2009, in which Dr. Cabayan stated that Plaintiff was able to continue working. AR 18; see AR 678.

Plaintiff relies heavily on the fact that, though she returned to her previous occupation on July 14, 2008, she was unable to work for more than four hours per day. Pl.'s Mot. at 5. She contends that this shows that she was still disabled during the disputed period from July 14, 2008 to March 2009. However, the ALJ agreed with Plaintiff, finding that she was not able to return to her previous occupation at any point. AR 19. Instead, the ALJ found that due to Plaintiff's sustained treatment from June 1, 2006 through July 13, 2008, medical improvement was achieved and she was able to return to light work. AR 19. The ALJ based his determination of medical improvement on the medical evidence in conjunction with the testimony of the Vocational Expert ("VE"). In steps one through four of the sequential disability determination analysis, the ALJ agreed with the Plaintiff for both periods: November 15, 2006 to July 13, 2008 and July 14, 2008 to March 2009. However, the ALJ relied on the opinion of Plaintiff's treating physician, Dr. Cabayan, the opinion of Dr. Pong and the VE to determine that while Plaintiff was unable to perform more than four hours

16

per day of her past relevant work, she was able to work eight hours per day, five days per week at one of the representative occupations cited by the VE. AR 19.

In order to make a medical improvement determination, the ALJ must assess a claimant's functional capacity to do basic work activities using various factors. 20 C.F.R. § 404.1594(b)-(c). One of the factors the ALJ must consider is whether any improvements in the signs and symptoms of the claimant's impairment have occurred. 20 C.F.R. § 404.1594(b)(4)(I). Further, the regulations require the ALJ to consider all evidence listed in 20 C.F.R. § 404.1512 when making his finding of medical improvement. 20 C.F.R. § 404.1594(b)(6). This evidence includes "statements [claimant] or others make about [claimant's] impairment(s), restrictions, daily activities, efforts to work or any other relevant statements [claimant] make[s] ...in testimony in our administrative proceedings." 20 C.F.R. § 404.1512(b)(3). Because the ALJ found Plaintiff credible, he had to consider her testimony regarding her limitations due to pain. In his decision, the ALJ relies only on medical evidence, not Plaintiff's testimony or that of her sister, in finding that medical improvement occurred on July 14, 2008, the date Plaintiff returned to work. AR 18-20. Thus the ALJ did not consider "all evidence" in making his determination that medical improvement occurred. This also constitutes error. See Burress v. Apfel, 141 F.3d 875, 880 (8th Cir. 1998) (ALJ improperly rejected the claimant's testimony as not credible in determining that medical improvement occurred and therefore determination was not supported by substantial evidence); Mendoza v. Apfel, 88 F. Supp. 2d 1108, 1115 (C.D. Cal. 2000) (holding that "since the ALJ's finding of medical improvement depends upon his unsupported and improper adverse credibility determination against plaintiff, there is no substantial evidence to support the finding of medical improvement").

In cases "where there are no outstanding issues that must be resolved before a proper disability determination can be made, and where it is clear from the administrative record that the ALJ would be required to award benefits if the claimant's excess pain testimony were credited," courts may take the testimony as true and refuse to remand. See Varney v. Secretary of Health and Human Services (Varney II), 859 F.2d 1396, 1400 (9th Cir. 1988). Here, however, the ALJ did provide a fair amount of evidence supporting his findings, although the findings were ultimately not sufficient. Because the ALJ did not properly address the credibility of Plaintiff's excess pain testimony, he did not

properly weigh her pain in determining that Plaintiff had achieved medical improvement on July 14, 2008. Finally, the excess pain testimony was not included in the hypothetical question presented to the Vocational Expert. AR 45. This may have led to an incorrect finding by the Vocational Expert that Plaintiff was capable of working as a security guard or information clerk. Id. Thus, the case is REMANDED for clarification regarding the credibility of Plaintiff's excess pain testimony as it relates to the second time period, and whether in light of that clarification, the determination of medical improvement stands. See Gonzalez v. Sullivan, 914 F.2d 1197, 1202 (9th Cir. 1990) (because the ALJ provided some evidence that may have been the basis for his credibility finding, the case should be remanded).

## VI. CONCLUSION

For the foregoing reasons, Plaintiff's motion is GRANTED, and Defendant's cross-motion is DENIED.

IT IS SO ORDERED.

Dated: July 14, 2011

ELIZABETH D. LAPORTE
United States Magistrate Judge